Responding to Appellate, Arguing for the Appellant, Mr. Richard Hussack, Arguing for the Appellate, Mr. Hussack, May it please the Court, Counsel, I am Assistant Attorney General Richard Hussack, Counsel for the Illinois Department of Financial and Professional Regulation, and I urge the Court to reverse the Circuit Court's dismissal at the pleading stage. With regard to primarily the STARS reports, because the question that was not answered by Walgreens was that the STARS reports may be kept somewhere else besides just the reporting requirement. They may be in a personnel file or some other location, correct? That is one of the grounds for our position that the respondent has not sustained his burden of production, which it has, to establish that it has no documents in its possession that are unprivileged and responsive to this opinion. Does the Act provide that the STARS report cannot be used or held anywhere else for some other purpose? No, it doesn't, but it says that no privilege attaches to the extent it is used or maintained for any other purpose or in any other location. That is at least the Department's understanding of the Act. I think this is a case of first impression. It has hence garnered two different groups of amici who have submitted briefs for the Court's guidance on this, and I would urge the Court to look very carefully. Before we get to, I think, the somewhat knotty statutory interpretation issue, though, on the burden of production issue, I think it's important to underline and emphasize the Department's position here that even the affidavits submitted by Walgreen, in this case, do not establish that they do not keep any copies of reports that are in their STARS system in any other location. Their affidavit, at first quick reading, might seem to suggest that, but read very carefully, it doesn't say that. It does not categorically state, we do not keep copies of our STARS reports outside the STARS system. They could have said that, but they didn't. Likewise, and back to the point that you raised, Justice Burkett, they do not say that we don't use those reports for any other purpose. I think that we can all agree that there are certain basics in the statutory structure that are undisputed, and that is that the source information that goes into the equivalent of a STARS report, whether it be this pharmacy chain or some other pharmacy chain, that original data is not privileged. Is there a definition of incident report anywhere in any statute or Department regulation? I don't believe there's a definition of it, and I think the Department acknowledges the fact that it did use the language incident report medication error. It didn't say any documents or other reports of medication error, and to that extent, if our subpoena is construed to be limited to what in common parlance is understood as an incident report, we can certainly live with that. And the record is clear that Walgreen has said if we submit a subpoena that asks for something beyond that narrow category of... Like any and all reports? Records, memorializing, reflecting, evidencing, you've seen discovery requests of that variety, and this used that term. Incident report is a term, whether it's a term of art or not, I'm not going to ask the courts to rule on that. But I think it does have an understanding that it's sort of like the typical police report, you know, that kind of thing. Obviously, from Walgreen's affidavit, that was not their understanding. And once you receive the initial affidavit from Walgreen's, why didn't the Department just amend the scope of the subpoena and use language such as any and all documents, reports of any kind, documenting or reporting incidents of medication error involving blank, whoever the pharmacist was? Well, zealous advocacy may be the reason they didn't, Your Honor. I think people have pitched their position on a certain ground, and they wanted to push forward. The reality is that however this case comes out, a subsequent subpoena may issue. But there are issues that are in dispute here. The parties are at issue on both the interpretation of the statute and the actual facts that relate to materials within Walgreen's possession or that it hasn't established it doesn't have that would be within the scope of the subpoenas and the law's nonprivileged category. Are you claiming that STARS is not privileged or that the law doesn't apply and that there is no privilege and that you have a right to see not only incident reports but any and all, regardless of whether sent on to those institutions that are supposed to collate and use those things to improve service? As I understand your question, our position is not that if they maintain a patient safety evaluation system and it is created solely for the purpose of reporting to a patient safety organization and the documents in that system are not used for any other purpose, we're not disputing that the privilege would apply in that situation. Are you contending that that is somewhat irrational that somebody would make up a report like that and then not use it someplace else? The statute was intended to promote a policy of the creation of a unique body of information, and to the extent that unique body of information was used solely for the statutory purpose, the policy was intended to say you get the privilege, but it wasn't intended to cloak other information under the auspices of, well, if you put it in here as privilege and then you're free to use it for any other purpose without blowing the privilege. That would be perverse to say, in essence, that the provider can say, well, we'll have access to that information for nonprivileged purposes, but nobody else can. It can't be a one-way street. My question wasn't whether they can use it. My question is, does it seem rational that they would only make this information available for one purpose and one purpose only? I can't speak to the corporate purposes of Walgreen. I don't know what's rational for their purposes. To the extent they previously had a quality control system, even before the federal law took effect, and they continue to use the information in that system, and it's created for that separate purpose that's unprivileged, it is the department's position that the privilege doesn't sweep that in and give it the additional privilege that's reserved for the federal government. It's the types of incident reports that are used exclusively for reporting to a patient safety organization. Well, did you ask, or did the subpoena ask for any reports generated in the continuous quality improvement system, which is the Walgreen's predecessor in-house? We didn't use the terms that they used to describe their internal corporate mechanisms, but we did ask for all incident reports of medication error. To the extent those are privileged under this federal law, we would agree that that federal law under the Supremacy Clause trumps any state law power that the department could assert for seeking these documents. But the key questions here are, do they have copies of these reports outside their STAR system? They haven't negated that factual possibility. Why would we have to tell you that if you didn't ask for them? We did ask for it. We asked for all incident reports of medication error. To the extent they want to assert a privilege and say they don't have to produce, and they're filing a motion to dismiss, they have the burden of production of establishing the applicability of that privilege. And their response was an affidavit saying that they didn't have any incident reports. And then your response was, there's a material issue of fact because there was a case where there were personnel records indicating somebody was giving prescriptions away for free. That was part of our response. But they did not say that they have no incident reports. They said they have incident reports in the STAR system. They didn't say, we don't have copies of STAR's reports elsewhere. That's called a negative pregnant, I believe. Did you ever – did trial counsel ever raise that with the trial court? Absolutely. We said that the fact that they say that they keep reports in their STAR system but won't claim that they don't keep copies of those reports elsewhere means that they have failed to sustain their burden of production. If this got to a trial and we had to prove that they had documents they weren't producing, the ultimate burden of persuasion would be on the department. But they are trying to prove the applicability of the privilege at the pleading stage by affidavits. And if those affidavits don't establish that there are no documents in their possession outside the scope of the privilege, it was error to deny – it was error to grant the motion to dismiss. And it's telling that they never said in those affidavits – We're deciding hypothetically whether or not they had any documentation whatsoever that was outside the scope. That isn't what we're doing here today. We're deciding whether or not they have anything that would supposedly be required to be produced based upon the language contained in the subpoena. I agree. But I think that it is important to keep in mind that they have the burden – we know that they have documents that are responsive to the subpoena. The only question is, are all of those documents, responsive documents, privileged? Well, the affidavit that they filed said they didn't have what you entitled incident reports. No, I disagree. I'm sorry. I have to say that I believe that that is not a correct reading of their affidavit. It might want the court to believe an incident report. Well, an incident report is a write-up that summarizes something related to what they say is an external event, which is when there is a wrong medication given, a prescription given to a patient pursuant to a prescription that didn't call for that, that was out of date, that type of thing. And that's what you asked for. I didn't say give us only STARS reports that are privileged under federal law. That's for sure. Your position is that they did not answer the question or answer the subpoena in terms of, are these STARS reports used for other than the enumerated purpose? And if they are used for that other purpose, then they're not privileged, correct? That is our position. And they haven't answered that. That's correct. And I would add that they also haven't said that they don't keep copies of their STARS reports outside the STARS system. So there's two aspects to the Department's appeal at this point, taking the definition of incident report as having a sort of common understanding. Purpose and location. Purpose and location, exactly right. So if they make a copy, your position is if they make a copy or they store these reports in some cloud that's provided, that you're entitled to them because they have essentially taken it out of the STARS system. That's correct. And I think the language of the statute couldn't be clearer. The supporting regulations emphasize that purpose. One of the amicus briefs, the Wildman Herald brief, I think does a good job of explaining that the purpose of this statute wasn't to take preexisting information and put a privilege over it. It was to encourage providers to create a new body of information and to the extent it was used only for that reporting purpose to patient safety organizations to attach a privilege to it, but not to then sweep within the scope of that privilege any other information or any use of those documents for any other purpose. And I think that's a laudable purpose. I think it's one that should be filled and can be fulfilled. But again, it does include copies of those records that would be maintained outside the exclusive use and transmission process for patient safety organizations, nor does it cover documents that are created or maintained for another purpose besides submission to a patient safety organization. If they make a copy to preserve for their record so that they can then talk with or communicate with whoever's received that report and make records, it's going to somebody for evaluation. It will come back to them to approve patient or client care, correct? Somehow. Distilled information from the patient safety organization. And that's a separate category of privileged information. It's not really in dispute here. But how do they have, what I'm asking you is, how, if this distilled information comes back six months later or three months later, how do they know what they're referencing if they don't have a copy somewhere to look at in-house? I think to the extent that they have a copy in-house that's only in their patient safety evaluation system and it's only purposes for reporting and I guess, you know, responding to input from the patient safety organization, we would concede that that is privileged. But you just said if they made a copy of it, that takes away the privilege. I should have qualified. I'm sorry. If they make a copy of it to use for their internal risk management purposes independent of the patient safety organization, for human relations purposes, for litigation support purposes, for any purpose other than those within the confines of this statute. Or discipline, which is what the department is all about. Exactly right. Exactly right. And again, I would say their affidavit doesn't say that they haven't made such copies. They have said there are no other incident reports besides the STARS reports that are kept outside the STARS system. But they don't say that the STARS reports themselves aren't ever kept outside the STARS system. Some lawyer drafted this and drafted this very carefully, but you can't assume as surplusage the word other when they refer to other incident reports. If they could have simply said we have no incident report pertaining to medication error that are collected or maintained outside the STARS reporting system, that's not what they said. They carefully said we don't have reports other than the STARS reports. And that indicates, or at least it doesn't exclude the possibility, and it's their burden to do so if they're going to dismiss this subpoena enforcement action, to establish that they don't keep copies of these STARS reports outside the patient safety evaluation system. Whether it be for litigation support, discipline purposes, HR purposes, or internal risk management independent from the STARS system. And then we have the much tougher question, and I think that involves both a factual issue and a legal issue. And that question is the one that Justice Burkett focused on, and I would like to reemphasize, is that there's a dual purpose for the documents that are in the STARS system itself. They have not disputed that there is, and again, it's their burden of production here. Was there any request for an in-camera inspection of any records from Walgreens? I believe there was not, Your Honor. Wouldn't it be prudent to ask, or wouldn't it have been prudent to ask the court to conduct an in-camera inspection of all the records relating to these three pharmacists and let the court decide whether or not there were documents that were quote-unquote STARS reports but were kept for another purpose or in some other location? I suppose it may have been, although the Department's position at the time was they haven't sustained their burden of establishing the nonexistence of requested documents or establishing that the only requested and responsive documents are privileged. But to the extent, and let me be clear on this, to the extent that they can establish those things that we are saying now they haven't established, then absolutely, the circuit court, based upon a full development of the facts, even if by affidavit, if that's what's required, could conclude that the subpoena seeks only documents that are covered by this federal statutory privilege. But we're not there yet. If there's a remand and a reversal from this dismissal and the circuit court, whether in short order or after appropriate factual development, concludes that there are no copies of STARS reports kept outside that privileged system itself and there is no dual purpose to the system such that the privilege would not apply to those records even within the system to the extent they're maintained and created for that separate purpose that's not privileged, then the court should be able to make a decision. But I think it's important that they have the system in place before the federal law took effect and they've gone to great pains to draft their affidavits not to deny either of those two propositions. So the department's reason for thinking there are other documents, twofold, number one, they had another system, and number two, that Lindsay case, the employment discrimination case, and that's how the department is coming up with this theory that they have other records or they're using these STARS reports in other ways. I think the department has those reasons plus the careful drafting, almost the cagey phrasing of these affidavits to believe that there are documents outside the scope of the privilege, but our bottom line position is they have the burden of production at this point to establish that no documents requested by the subpoena are outside the scope of the federal privilege. And if they haven't sustained that burden of production at this point, dismissal of the action to enforce those subpoenas was not proper. They're the ones asserting the privilege. They're the ones at this point that have the responsibility to establish by affidavit that there were no documents requested that were not privileged, and they haven't done that. They haven't said we don't have documents within the STARS system that are kept outside the STARS system, and they haven't said that we don't create or use documents within the STARS system for another purpose. Explain to me what you mean by burden of production. The burden of production is when somebody moves for summary judgment, it is their burden to establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Under a Rule 2619 motion, it's the same as a 21005 motion. I think the 103rd Kedzie case by the Supreme Court is pretty clear on the who has to go forward. And so although if this went to trial, the ultimate burden of persuasion and proof would be on the department, at this point, they need to establish that it was proper to dismiss this action seeking enforcement of the subpoenas because every document they have requested by the subpoena is covered by this federal law of privilege, and they haven't done it. I believe on motions for summary judgment, it's not the defendant's burden to establish that judgment should be entered because there's no material issue of fact. If the plaintiff is contesting it, the plaintiff's burden is to establish that arguably it can sustain its judgment. When you said the burden of production, I was under the impression you were talking about producing the documents, so I'm glad I asked. No. Because you seem to be talking more about the burden of proof and the burden of going forward is the phrase that I've used when I've talked about who has the burden to sustain the motion that they supposedly are moving to seeking to have granted. I meant it only in the procedural sense. All they have to establish is there's no material issue of fact, and then the judge decides which way it falls. You, as plaintiff, however, you have to, if supposedly they're claiming that there's no material issue of fact, your position is that there is a material issue of fact, and we have established a prima facie case. Well, no, I disagree with that, Your Honor. Okay, then tell me how I'm wrong in that interpretation. What is it that you have to establish? You don't have to establish anything. Is that what you're telling me? You don't have to establish a prima facie case if the facts are uncontroverted? I have to make an argument that they haven't sustained their burden of demonstrating by their affidavits that they have no documents that are outside the scope of the federal privilege. In the federal court system, there's something that's known as a sell-and-tax motion for summary judgment, where the defendant who doesn't bear the burden of ultimate persuasion on an element of the plaintiff's claim, after all discovery is done, says, okay, it's the put-up-or-shut-up moment. We've done discovery. We found nothing in the plaintiff's records and testimony and deposition and everything else that shows that they can sustain their burden of proof at trial on this element where they bear the burden of persuasion. The state courts actually have not espoused the sell-and-tax principle for motions for summary judgment, although I think it makes a lot of sense from a practical perspective. But in any event, if the defendant is coming forward with affidavits to negate the existence, not just to say what does the plaintiff have, but to say we can affirmatively disprove that the plaintiff could prevail at trial, then they have what I think you call the burden of coming forward. Going forward. Of going forward. And their burden of going forward at a 2619 motion is similar to the defendant's burden at a summary judgment motion if they're trying to establish the inability of the plaintiff to recover on their claim. In this case, it's an action to enforce these subpoenas. The defendants are essentially asking the court to conclude that their affidavits have established that they have no documents that are responsive to the subpoena other than documents protected by this federal law privilege. That's their burden of going forward. Our position is they have not sustained that burden. Aren't there attorneys working for the department who can just as craftily word a subpoena instead of just using the words of this statute? Because that's what they're using the language of the statute in the subpoena, which is what causes some of the problems. In retrospect, I assume that after this controversy arose, and in the past I think they've used similar language in subpoenas and haven't hit a speed bump, there's no fault to Walgreen for resisting this. The fact that other companies may have turned over some documents using the same language may have lulled the department into a sort of false sense of confidence. But having used that language, that only gets us partway. That only gets us partway to determining within the scope of things that are incident reports of medication error, what are the documents in Walgreen's possession that are within the privilege and those that are not? And it's simple enough for them to declare this is the universe of documents we have, and this is how they're used, and this is how they're maintained, and this is how they're preserved. And if, in fact, that satisfies their burden of going forward to demonstrate that all of those documents are within the scope of the federal privilege, then they would be entitled to judgment as a matter of law. But they haven't done it. That's our position. And I gather from the active questioning here that the Court has fully engaged with these. I'm a last-minute pinch hitter on this case. I appreciate the privilege of being able to argue in this case against esteemed opposing counsel here. And so I simply want to summarize the two, I think, critical factual and legal points that we have for resisting the – for seeking reversal of the Circuit Court's judgment in this, which is that Walgreen's has not, by affidavit, demonstrated that they don't keep copies of these STARS reports outside the STARS system, and they have not demonstrated by affidavit that they do not use their STARS reports for any other non-privileged purpose, such as for discipline or litigation support or human relations-type purposes. And it's our submission that on the relevant legal principles, because they have not established that such records would be privileged, and they are within the scope of the subpoena, it was error to dismiss this action at this stage. Thank you. You have an opportunity for rebuttal. Thank you kindly, Your Honors. May it please the Court to have a different view from down here than from up there. Is it any easier down there? No, it's a lot harder down here. Yeah. My name is Peter Grometer, and I represent the respondent of Walgreen's in this matter. And really what's brought us here and what we're going to discuss in this argument are four documents. The first is the subpoena. Actually, they were three identical subpoenas, or the look at the language of those subpoenas. And we're going to talk about that act of Congress, that PSQIA, what I call the Patient Safety Act, because I can't remember all the acronyms. PESQIA. PESQIA, thank you. And then the affidavit of the Walgreen employee, Susan Hansen, and then the affidavit of the Attorney General or the Attorney for the Illinois Department of Professional Registration, Mr. Golden. And I think when we look at all of those documents and we hold them up to the light of reason and reasonable interpretation, you're going to see that the decision of the trial court should be affirmed and that we should affirm that decision. Your standard of review is, of course, to an Oval. Justice McClaren, you asked, is it rational that these reports only be prepared for submission within the system? And I respond to that quite clearly. Yes, it is very rational that they would want to do that. They would keep these reports. They have the system.  And they did that because they wanted to keep their patient safety work product confidential. And we have the discussion of all the parties, and all the parties have agreed in their briefs, in the Yamakai briefs. We take a look at the reasoning behind that and the fact that back in 1999, the Institute of Medicine came up with the report, and within three weeks after that, Congress was holding hearings. And it took Congress all the way up to 2005 to actually enact the Patient Safety Act. They were carefully crafting something that would protect all the parties, the rights of the state to continue to do their regulation, the rights of litigants, to be able to get their hands on information that they had prior to that. But they are, so we're trying to keep them. Does Walgreens ever fire anybody? Say it again? Does Walgreens ever fire anyone? Do we ever fire anyone? I would assume that we fire people. And what does Walgreens use as, do they just bring them in and say, you're fired? They have Donald Trump working for them? Or is there some sort of explanation and hearing process? Well, I would assume from the affidavit that was filed by Mr. Golden in this matter on behalf of the department, that they do have a review process and they do have a chance to come in and explain it, and they have performance evaluations and whether or not you're meeting standards. And Walgreens' position is those are not the documents that were requested? Walgreens is, I don't know if you've noticed, but we're kind of, we're a big organization. You might have seen some of our retail outlets. And we get thousands of requests for documents and requests for subpoenas. And we respond to them. We get them from the Illinois Department. And Consul has alluded to that. We get them all the time, these requests for documents, and we respond to them. We give them away. In responding, you mentioned that you get subpoenas all the time from the department, from counties. In the interest of protecting the public and consistent with the Pharmacy Practice Act and making sure that pharmacists who get out of line are appropriately disciplined, not just by Walgreens but by the state of Illinois, shouldn't the language of the subpoena really be read broadly enough to include all reports or documents reflecting medication error by these three pharmacists? I mean, isn't that really what this is all about? Well, the subpoena, they took the words of the subpoena. It's their words of their subpoena. Right. Walgreens acknowledges that they probably have documents reflecting instances of medication error, but they're not incident reports of medication error. That's what this comes down to, right? I couldn't say it any better than the trial court did. The trial court said performance reviews and loss prevention reports, which were an issue in the Lindsay case, do not equate to incidence reports of medication error. What about the counsel's argument that there isn't, even given the definition and accepting Walgreens' position that the only documents, the only truly responsive documents that they have are the STARS reports, and that's the only documents they have? What about counsel's argument that if Walgreens keeps them in another location or for another purpose, for example, discipline or risk management, that that waives the privilege? And that there's still a remaining issue? You haven't answered that question. Well, first of all, that's not our case. What we have is the affidavit, and we have to look at Ms. Hansen's affidavit and the supplemental affidavit. I've read it several times. It doesn't answer that question. If they are created within the system, all right, they remain in our privilege. If they're used for other purposes, for example, as in the Lindsay case, and I think Lindsay makes this position for us, and that's Lindsay was in their affidavit. If they're used for performance evaluations, well, then they're not privileged, and we hand those documents over all the time. But what we're really talking about here is the reports that we prepare. This was a very carefully, you know, he talked about our giving a carefully crafted affidavit. He has a very carefully crafted request for subpoenas. They didn't use the common language of any and all documents, doing this and doing that or talk about this or talk about that. We get those all the time, and we give them the information all the time. Could it be possible that your client could have been held in contempt because you didn't submit incident reports, even though you might have submitted other reports because the reports that you gave didn't have the word incident on them? Well, I think that we had to give the response that we gave. We gave a response that said of an affidavit that this is privileged. If they had given us a subsequent subpoena for all those other documents, we would have reduced them. What about the negative pregnant aspect of the affidavit to Ms. Hansen's client? Well, at least as argued by Mr. Hansen, I don't think it is a pregnant negative, but you and I may disagree on that. You've got to go back and you read it. There are no other incident reports pertaining to medication here. That's pretty straightforward. So, in other words, you're saying that by saying that there are STARS reports, she's answered the question that they're used for that purpose and that purpose only. She's answered that as clearly as I think you can answer it. There is a STARS report. That STARS report was prepared for the purposes of filing with a patient safety organization. We filed it with a patient safety organization. Well, if you had STARS reports that were used for another purpose, then the subpoena could indicate that they wanted any STARS reports that were used for any other purpose, right? Well, there's a lot of hypotheticals out there. And then what would your response be? Your response would be either to file an affidavit saying that there are no other STARS reports that are used for any other purpose, or you would produce the document, would you not? Absolutely we did. And would have done. But what's crucial here is they have to be prepared within this system, this patient safety system. We can't just dump, and we don't just dump everything into here and say, okay, now you can't get your hands on it. That's not what the Act is all about, and that's not what we do. But we do need to protect these confidential statements. In fact, if you take a look, I believe it's Ms. Hansen's affidavit has attached, and it's in the appendix, both appendix. There's a template of a STARS report. You look right down at the bottom of that template, and it says do not copy. Confidential, do not copy. And that is our system. We're trying to get this information fed back to us. You know, in your brief, page 8, Walgreens discusses the outdated and ineffective sanctions. Walgreens' position is that the department's system of sanctions are outdated and ineffective. Walgreens, you're not arguing that, are you? No, we're not arguing that. No. They have a job to do, and they should be doing it, and I think they can. They can't short-circuit their responsibilities. I mean, they can send out an investigator and pull the prescription, and they can talk to the pharmacist. They can do anything that they want to do to investigate these things. But what they can't do is what Congress has asked them not, you know, has protected them from. They can't come in here and get copies of these confidential STARS reports within that patient safety system because if you do that, and here's where your rationality comes in, Justice McClaren, won't they just stop writing up the reports? If they wanted to thwart discovery, that would be the logical conclusion. Well, nobody's going to try to do that. I mean, practically, you know when you do litigation or you do enforcements, it's usually what you've created yourself that comes back to kill you. It's a policy issue. Which is more important? Well, I think more important is patient safety. Does Walgreens still employ a continuous quality improvement system, the CQI? That's a system that we had in place prior to the adoption of the Patient Safety Act in 2005. And when that act came in, we went back and we took a look, and I think Ms. Hansen's affidavit establishes that, that we went back and took a look so that we would design our system so that it would comply with the new federal statute. And that statute's pretty straightforward. I mean, we're not dealing with the IRS here. This isn't the Internal Revenue Code. It reads pretty clearly. You can't subpoena it as long as you follow the procedures and keep it within the system. And that's what we did. And when you say within the system, you mean within the STARS system, not within the Walgreens system. Right, within our STARS system, within our patient safety system. Is that STARS system your proprietary? Not your personal, but your proprietary? It is a proprietary system. Yeah, it is a proprietary system. Okay. Which was developed exclusively to comply with the act. Absolutely. Has the state ever claimed that it doesn't comply, that your confidential reports don't comply with the act? No. Essentially, is it your understanding that their claim is, is that you have used the STARS for other purposes or there are other reports other than STARS reports that would be incident reports that contain information about improper prescriptions? I think their claim comes down basically to the fact that they said, oh, we lost this enforcement case. We should have gone and gotten discovery beforehand. We should have filed something. They had a case management order in place that set forth dates for disclosure of expert witnesses and for taking the depositions and for all this kind of stuff. But there's nothing in the record to indicate that they ever came in and said, Judge, we need a continuance to file some interrogatories. We'd like to take Ms. Hansen's deposition. They didn't do any of that. And the reason I submit that they didn't do that, and I think you could find that as a logical argument here, is they knew it would be futile because they had Ms. Hansen's affidavit and they said this STARS report is all we have. That's the way the system is as far as a report, an incident report of a medication error. Does Walgreens have an affirmative responsibility to report that medication error to anybody other than STARS? In Illinois? Yes. No, not in Illinois. In other states there are laws to that effect. But individuals can go and say I got the wrong prescription, and that's what starts most of the investigations. Or the pharmacists themselves discover that something has happened. And they have internally a formal obligation to then report before they go off duty that day that something has happened. So either somebody came in to complain or they discovered their own error. Okay. You've heard the term justiciable? I have. It seems like this appeal is whether or not your proprietary system is subject to a privilege or is not subject to a privilege through several semantical arguments and rebuttals. Is this case justiciable whereby we're supposed to render a definitive decision as to whether or not it is or is not privileged? Has this case been perfected on appeal for us to make that resolution? Or are we supposed to, in the alternative, say based upon the arguments that are raised, we don't even have to get to the issue because the only affidavits on file indicate there are no material issue of fact and you don't have any incident reports? I think that what this case is about is the same thing that was decided by the trial court and which has come up here on appeal. And that is whether or not under that 2619 motion and the affidavits that were filed, whether there is an issue of fact that has to be resolved. And our submission is that Ms. Hansen's affidavit clearly says there is not an issue that has to be resolved, an issue of fact, and that Mr. Golden does absolutely nothing in his affidavit to set up a trial issue of fact or contradict it. He talks about these personnel reports and reports of incidences in those personnel reports, but he never contradicts that there is an outstanding someplace else, one of these STARS reports being used for anything else. You agree that any issue of privilege should be strictly construed against the party asserting privilege? I think that's a pretty fair accuracy. The point, your rebuttal to the State's point, to the Department's point, is that by saying the only thing we have is STARS reports, is that when we say all we have is STARS reports, those STARS reports are kept for the intended purpose, stored for the intended purpose, and not used for other purposes. That's correct. So if a subpoena had been drafted more broadly, maybe Wagee would be able to comply like in the Lindsey case? Absolutely. The standard for reviewing a subpoena is the standard for reviewing any request for discovery. It's got to be specific enough that it enables the person who's going to respond to it to know what it is that they have to give. And then also with the trial court in ascertaining whether the requested material is exempt or privileged. And if you go to the subpoena and then you go back to her affidavit, I think it's answered. And you can do all you want to to try to expand it or convolute it. But the documents and the wording, the wording of the subpoena was selected by the department, and the response answers what they asked for. We're not trying to play games here. As I said, we respond to all kinds of things. Okay, thank you, sir. Thank you. There are no more questions. Thank you. Thank you. You said you were a pinch hitter. Would you like to explain that? Are you left or right-handed? Have you ever been a designated hitter? You know, I've never been a designated hitter. It's not because my fielding is so bad. I think it's because my baseball skills generally probably didn't get out of the junior high level to be competitive. But Cliff Berlow from our office, who's briefed this, is under the weather. He has the flu. And so I offered to, starting Friday morning, to get ready to present to the court. And, again, I appreciate the honor of being here. You'll be careful about those offers in the future. I think he owes me big time. We'll see how I get the payback on this one. Remind Cliff, and I think all the parties, including Yamiki, excellent briefs. But page four of your reply brief, you might want to tell Cliff. He's got a 28-line footnote and seven lines of text on that page. I'm going to specifically tell him as soon as I speak to him about how important this court considers the admonition in the Supreme Court rules about using footnotes, if any, sparingly. That said, let me quickly turn to the issues in rebuttal, Your Honor, and I think you've put your arms around it. Let me ask one question that relates to the specific issue of what other incident reports mean. The department seems to be reading, it's the supplemental affidavit, number two, paragraph number two, the second sentence of paragraph number two. By saying there are no other incident reports, that means there's something else. But why isn't the department reading the entire paragraph two? Well, I believe we are, and I think it's important to acknowledge that the defendant's affidavits do clearly state that the only incident reports of medication error they have are reports in their STARS system. That we don't dispute. What they don't say, and I'll jump to the kind of conclusion here for the department's position, they don't say that they don't have any copies of STARS reports outside the STARS system or that they don't use any STARS reports for any purpose other than for the patient safety evaluation system and to report it to a patient safety organization. It's those two non-averments by the defendant that we think demonstrate that they have failed to establish their burden of going forward, or I would say the burden of production to establish the absence of a genuine issue of material fact and that they're entitled to judgment here. And let me focus on the language of those two sentences of paragraph two of the supplemental affidavit appearing in the appendix to the department's opening brief at page 21. The first sentence says, if I may paraphrase, that their only incident reports are STARS reports. The second sentence says there are no other incident reports kept outside the STARS system. In other words, there are no incident reports other than STARS reports kept outside the STARS system. It doesn't say we don't keep any STARS reports, copies or otherwise, outside the STARS system. This is their affidavit. If they were going to say there are no incident reports pertaining to medication error collected or maintained outside the STARS system, they could have said that. But they defined incident reports within the STARS system and then said there are no other incident reports. Were these affidavits outside, pursuant to Section 191? I'm sure they were. I'm sure in support of their 2619 motion, they submitted them in support of, pursuant to Rule 191 and the general common law of affidavits. And our position is, if they covered the waterfront with these affidavits, then it would have been incumbent upon the Department, at a minimum, to produce a counter-affidavit, or submit a motion pursuant to Rule 191B to pursue limited discovery to try and produce a counter-affidavit where there would be an affirmative dispute of some of these factual affirmance. Our position is they didn't cover the waterfront. They left the door open with respect to the scope of the documents requested by the subpoena. And it's that gap and the significance of the fact that they carefully draft these affidavits not to close that gap, that we suggest that those documents within the scope of the subpoena, that they haven't established our privilege to warrant the conclusion that the Circuit Court erred in dismissing this action at that stage. Now we're down to, you know, a careful parsing of that paragraph from the affidavit, the provisions in that paragraph of the affidavit with respect to, are there any copies of STARS reports outside the STARS system? And I think the more difficult issue is, are even those reports used or maintained for any other purpose? And I think because this is a privilege, it helps to sort of keep in mind the general principles of privilege, which is you don't cloak under a privilege something that's otherwise unprivileged just because you throw it in that box, too. You can't hand your lawyer, you know, a letter and then confer a privilege on it. And I think the best, if I may, analogy is after accident, improvements in a design. It's a rough analogy. Take it for what it's worth. But a defendant can't be forced to, or a plaintiff can't produce in a simple tort case where there's a claim of defective design. By policy, they say you can't produce in evidence the fact that the defendant made an improvement in the design after the accident to prove negligence. The reason is that would discourage people from making improvements in design, and that serves public policy. But if the defendant at trial says, we couldn't have designed this better, they open the door. And the plaintiff is allowed to put in evidence the fact that they did design it better right after the accident. That's sort of the same reasoning that goes on here. If the exclusive purpose of preparing these reports and the exclusive use is to be used within the patient safety evaluation system, then that would be privileged. But they haven't said so. And because they haven't said so and they haven't closed the door on these documents being used for disciplinary or other purposes, again, it is our submission that at this point, at the pleading stage, they have not sustained their burden and that the court should reverse the dismissal of this action at this stage. Any other questions? No. Thank you. We'll take the case under advisement.